UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ISRAEL LOWY                                    :
                                               :
                          Petitioner,           :        **Memorandum and Order**
         -v.                                   :
                                               :        05 CV 10336 (LBS)
CRAIG APKER, Warden, in his official           :
capacity,                                      :
                                               :
                          Respondent.          :
-----------------------------------------------------------x

SAND, J.

Pro se petitioner Israel Lowy ("Petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] He challenges Bureau of Prisons ("BOP") regulations which limit a prisoner's placement in a community corrections center ("CCC"), commonly referred to as a "halfway house," to the lesser of ten percent of the prisoner's total sentence or six months. For the foregoing reasons, the petition is denied.

BACKGROUND

A. Petitioner's Sentence

On April 14, 2004, Petitioner pled guilty in the United States District Court for the Eastern District of New York to operating an unlicensed money-transmitting business in violation of 18 U.S.C. § 1960. On February 28, 2005, he was sentenced to serve one year and one day in prison, to be followed by a three-year term of supervised release. Petitioner is currently incarcerated at the Federal Correctional Institute in Otisville, New York. His projected release date is April 29, 2006.

---

[1] Petitioner did not exhaust his administrative remedies, but asserts that such a pursuit would be futile. As this Court has recently determined that a habeas corpus petition is the proper means for bringing the type of challenge Petitioner brings here, see Franceski v. BOP, No. 04 CV 8667, 2005 WL 821703, at *2-*4 (S.D.N.Y. Apr. 8, 2005), and as "a habeas petition brought under 28 U.S.C. § 2241 . . . is not subject to the statutory exhaustion requirement contained in 28 U.S.C. § 2254," id. at *4, the Court excuses Petitioner's failure to exhaust, both because Respondent does not raise the issue and because the Court agrees that it is futile to require exhaustion here, where a petitioner is challenging a regulation's validity, as opposed to its application. See also Woodall v. Fed. BOP, 432 F.3d 235, 239 n.2 (3d Cir. 2005).

1

B. BOP Placement Policy

Although the statutes governing the BOP's authority to assign and transfer a prisoner to a CCC have not been amended in several years, the BOP's CCC placement policy has changed twice since 2002. In brief, before December 2002, the BOP regularly considered CCC placement for the final six months of a prisoner's sentence, regardless of whether six months exceeded ten percent of the total time the prisoner was required to serve. In December 2002, however, the Department of Justice's Office of Legal Counsel issued a memorandum which reasoned that the BOP's statutory authority to place a prisoner in a CCC was derived solely from 18 U.S.C. § 3624(c),[2] and thus concluded that Congress permitted the BOP to consider CCC placement only for the final ten percent of a prisoner's sentence, not to exceed six months. The BOP subsequently memorialized this new policy ("December 2002 policy").

The December 2002 policy was held unlawful on statutory interpretation grounds by several courts, including this one.[3] These courts reasoned that while § 3624(c) did *require* the BOP to consider a CCC placement for the final ten percent of a prisoner's sentence, it did not *prohibit* the BOP from considering such a placement earlier. They read 18 U.S.C. §3621(b),[4]

---

[2] Section 3624(c) reads: "Pre-release custody. The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement."
18 U.S.C. § 3624(c).

[3] See Franceski, 2005 WL 821703 (holding policy unlawful); see also, e.g., Pinto v. Menifee, No. 04 CV 5839, 2004 WL 3019760 (S.D.N.Y. Dec. 29, 2004) (same); Grimaldi v. Menifee, No. 04 CV 1340, 2004 WL 912099 (S.D.N.Y. Apr. 28, 2004) (same); Cato v. Menifee, No. 03 CV 5795, 2003 WL 22725524 (S.D.N.Y. Nov. 20, 2003) (same). Accord Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004); Goldings v. Winn, 383 F.3d 17 (1st Cir. 2004). But see, e.g., Loeffler v. Menifee, 326 F. Supp. 2d 454 (S.D.N.Y. 2004) (upholding policy); Cohn v. Federal BOP, 302 F. Supp. 2d 267 (S.D.N.Y. 2004) (same).

[4] Section 3621(b) reads:
    Place of imprisonment. The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering—
    (1)     the resources of the facility contemplated;
    (2)     the nature and circumstances of the offense;

Congress's general grant of authority to the BOP to designate the place of a prisoner's imprisonment, to vest the BOP with the discretion to authorize a CCC placement at any time during a prisoner's sentence, while having regard for the factors enumerated in that statute.

In response, the BOP proposed and adopted, pursuant to the Administrative Procedure Act's notice and comment procedures, 5 U.S.C. §§ 551-59, the regulations at issue here ("February 2005 policy").[5] Although in its effect on prisoners the February 2005 policy is identical to the December 2002 policy, the underlying reasoning is substantially different. Whereas the December 2002 policy rested on a restrictive interpretation of the BOP's discretion under §§ 3624(c) and 3621(b), the February 2005 policy acknowledged that the BOP does have the discretion to place a prisoner in a CCC prior to the time specified in § 3624(c). However, in formulating the February 2005 policy, the BOP "determined *to exercise its discretion*

---

       (3)      the history and characteristics of the prisoner;
       (4)      any statement by the court that imposed the sentence—
A. concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
B. recommending a type of penal or correctional facility as appropriate; and
       (5)      any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.
In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another.
18 U.S.C. § 3621(b).

[5] As codified, the policy provides:
    § 570.20  What is the purpose of this subpart?
    (a)    This subpart provides the Bureau of Prisons' (Bureau) categorical exercise of discretion for designating inmates to community confinement. The Bureau designates inmates to community confinement only as part of the pre-release custody and programming which will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry into the community.
    (b)    As discussed in this subpart, the term "community confinement" includes Community Corrections Centers (CCC) (also known as "halfway houses") and home confinement.
    § 570.21  When will the Bureau designate inmates to community confinement?
    (a)    The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months.
    (b)    We may exceed these time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority (for example, residential substance abuse treatment program (18 U.S.C. 3621(e)(2)(A)), or shock incarceration program (18 U.S.C. 4046(c))).
28 C.F.R. §§ 570.20-570.21.

*categorically* to limit inmates' community confinement to the last ten percent of the prison sentence being served, not to exceed six months." 69 Fed. Reg. 51213, 51213 (Aug. 18, 2004) (emphasis added). To justify this categorical exercise of discretion, the BOP relied specifically on the Supreme Court's recognition in Lopez v. Davis, 531 U.S. 230 (2001), that "'[e]ven if a statutory scheme requires individualized determinations, . . . the decisionmaker has the authority to rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority.'" Id. at 243-44 (quoting Am. Hosp. Ass'n v. NLRB, 499 U.S. 606, 612 (1991)). The BOP then clarified that it would "continue to make a case-by-case determination of the particular prison facility (i.e., non-community-confinement facility) to which it [would] designate each individual inmate." 69 Fed. Reg. at 51213.

DISCUSSION

The February 2005 policy has been the subject of numerous habeas petitions before courts in this district and others.[6] In this case, Petitioner makes three arguments. First, he contends that §3621(b) imposes a "discretionless obligation," which eliminates any BOP rulemaking authority with regard to the placement and transfer of prisoners. (Pet. for Writ of Habeas Corpus 4-7.) Second, he argues that even if §3621(b) does allow for BOP rulemaking, the February 2005 policy is an invalid rule because it ignores the plain meaning of the statute; essentially, Petitioner argues that an exercise of categorical decisionmaking is incompatible with the statute's focus on the individual. (Pet. 7-11.) Finally, Petitioner also asserts that the February 2005 policy violates the Constitution's Ex Post Facto Clause. (Pet. 11.)

---

[6] A majority of the courts in the Southern District of New York to have considered these regulations have upheld them, see, e.g., Eli v. Apker, No. 05 CV 2703, 2005 WL 2848956 (S.D.N.Y. Oct. 28, 2005); Charboneau v. Menifee, No. 05 CV 1900, 2005 WL 2385862 (S.D.N.Y. Sept. 28, 2005); Bialostok v. Apker, No. 05 CV 2698, 2005 WL 1946480 (S.D.N.Y. Aug. 12, 2005); Moss v. Apker, 376 F. Supp. 2d 416 (S.D.N.Y. 2005), though two Southern District courts and the Court of Appeals for the Third Circuit have held the regulations invalid, see Woodall, 432 F.3d 235; Lesnick v. Menifee, No. 05 CV 4719, 2005 WL 2542908 (S.D.N.Y. Oct. 11, 2005); Drew v. Menifee, No. 04 CV 9944, 2005 WL 525449 (S.D.N.Y. Mar. 4, 2005). The Court of Appeals for the Second Circuit heard argument on this issue in Levine v. Apker, No. 05 CV 3472, 2005 WL 1417134 (S.D.N.Y. May 20, 2005), appeal docketed, No. 05-2590-pr (2d Cir. May 27, 2005), on August 4, 2005, but as of this date has not issued a decision.

4

The first two arguments were raised in a court filing of another petitioner, Daniel Charboneau, who also challenged the February 2005 policy. See Charboneau v. Menifee, No. 05 CV 1900, 2005 WL 2385862, at *4-*6 (S.D.N.Y. Sept. 28, 2005). In fact, not only are the arguments in these two briefs identical, but so is the language, leaving the Court with no difficulty in concluding that Petitioner's brief has merely been copied from Charboneau's. (It is worth noting that the briefs submitted by Respondent in both cases are also, in large part, identical.) Of course, the fact that this is at least the second time that these arguments have been presented (verbatim) to a court in this district entitles Petitioner to no less consideration of these arguments by this Court.

That said, this Court agrees with the decisions of those courts that have upheld the February 2005 policy,[7] and more specifically, with Judge Mukasey's analysis of the particular arguments raised by Petitioner. See Charboneau, 2005 WL 2385862, at *4-*6. This Court thus adopts Judge Mukasey's analysis here and rejects Petitioner's arguments against the BOP's categorical exercise of discretion.

Petitioner also maintains that even if the February 2005 policy does represent a lawful exercise of the BOP's discretion under §3621(b), it violates the Ex Post Facto Clause as applied to him because it went into effect after the completion of his criminal conduct.[8] However, this Court agrees with and adopts both Judge Casey's thorough analysis of whether the February 2005

---

[7] See supra note 6 (collecting cases upholding and invalidating the February 2005 policy).

[8] Petitioner's Judgment and Commitment Order indicates that his offense conduct concluded sometime in December 2002. The Court notes that if Petitioner's criminal conduct continued past the effective date of the December 2002 policy, he would not be able to bring an Ex Post Facto challenge to the February 2005 policy, because its deterrent effect would have been identical to that of the December 2002 policy already in force. (The December 2002 policy was in effect at the time of Petitioner's plea and the February 2005 policy was in effect at the time of his sentencing.) See Moss, 376 F. Supp. 2d at 425 n.6 ("[W]hile the policies underlying the Ex Post Facto Clause may be most directly implicated when punishment is increased after the date of plea or sentencing because 'a prisoner's eligibility for reduced imprisonment is a significant factor entering into both the defendant's decision to plea bargain and the judge's calculation of the sentence to be imposed,' Weaver v. Graham, 450 U.S. 24, 32 (1981), the Supreme Court has also indicated that the only relevant 'timing' question is whether the defendant's crime was committed before the allegedly punitive statute's enactment.") (citations omitted). However, because it is unclear when in December 2002 Petitioner's criminal conduct ceased, this Court will err on the side of caution and construe the facts as presenting a constitutional question.

5

policy violates the Ex Post Facto Clause and his conclusion that it does not. See Levine v. Menifee, No. 05 CV 1902, 2005 WL 1384021, at *7 (S.D.N.Y. June 9, 2005) ("The Court concludes that this is a change in the prevailing legal regime that does not amount to an increased penalty because it does not have the purpose or effect of enhancing the penalty associated with Petitioner's crime.") (citations omitted); see also Lee v. Governor of N.Y., 87 F.3d 55, 59 (2d Cir. 1996) (state statute and executive order which retroactively rendered plaintiff prisoners ineligible for certain temporary release programs did not "constitute an increase in punishment" because "[t]heir evident purpose [was] not to add punishment, but rather to serve the regulatory purpose of limiting early community contact for those in the designated felony categories.").

CONCLUSION

For the reasons stated above, Petitioner's motion for a writ of habeas corpus is denied and the petition is dismissed.

SO ORDERED.

Dated: New York, NY
February 9, 2006

_____
U.S.D.J.

6